We'll hear argument now in the case of Milam v. Selene Finance. The case of Milam v. Selene Finance Ms. Leighton Good morning, Your Honor. May it please the Court, Shelby Leighton for Appellant Ramona Milam. The District Court held that Ms. Milam was barred from enforcing the FDCPA against Selene solely because she didn't comply with a notice and care provision in her mortgage that on its face does not apply to claims against Selene. There are several independent ways that this Court can reverse that holding, and I'm going to focus on three. First, the Court erred by concluding that Selene can overcome the notice and care provision's facial limitation to the lender because, as a matter of law, it was an assign of the lender. Illinois law requires proof of an assignment, and Selene has offered none. May I stop you there, because I do have a question for you, which is why we should hold, as you argue, that the notice and care provision is an unenforceable waiver of the lender's statutory rights under the FDCPA. Sure, and the Court doesn't need to get to that. I'm sorry, I took a breath. If providing notice and an opportunity to cure to Selene would cause Selene to retract the misleading statements and offer the same damages that Milam could obtain by suing, wouldn't that strengthen rather than weaken enforcement of the rights that are protected in the FDCPA? Sure, so I think there's two main reasons why this is an unenforceable waiver. Essentially, this provision serves only as a gotcha for consumers because it's impossible for any consumer, let alone an unsophisticated one, to tell when they're supposed to provide notice under this provision. They would have to anticipate Selene's argument that the word lender in the notice and care provision doesn't actually mean lender. They would then have to go find Section 13 of the mortgage and read it the way that Selene reads it, and then they would have to find out whether Selene is in fact in the sign of the lender, which is impossible to find out without seeing the contract between the lender and Selene, which we do not even have. Then they would have to figure out how to provide notice to Selene, given that Section 15, which describes how to provide notice, only talks about how to provide notice to the lender, not to the loan servicer. And so essentially, most consumers, if not all consumers, would not even know that there may be a possibility that they have to provide notice, let alone that they definitely have to provide notice in this situation. And then on top of that, as you referenced, any opportunity to cure would be futile because the statutory violation here has already occurred. Selene is wrong that it could have cleared the violation. To be clear, we're not talking about just calling up Selene on the phone with a question about what the letter it sent means. What's contemplated by the Notice and Cure provision is that you're contemplating a judicial action and that you're providing notice in writing of a breach or a violation of the law. And so that means that Ms. Milam was required to give notice once she already knew that Selene's statement was misleading and was contemplating legal action under the FDCPA. And at that point, anything that Selene said wouldn't have made a difference because she already knows that there's a different timeline for foreclosure and that Selene had made a misrepresentation. And additionally, at that point, the statutory violation has already occurred. And as the Northern District of Illinois said in the Harrington case, at that point, Selene can't unring the bell. They can't go back and undo their statutory violation. Ms. Milam has a statutory right at that point to sue Selene, and nothing that Selene does or says is going to change that fact. Ms. Layton, can I ask you kind of a threshold question? Sure. And that is, are you sure there's Article III standing here in terms of injury in fact? Yeah. And the reason I say that is because it's clear that your client alleged a violation of the consumer protection statutes. That's as clear as day. But it's with respect to a death that she already owed, right, and was laid on. And I know she says, well, I had more time, and it kind of caused me to juggle my money around, and I had to accelerate payment that way. But where is the allegation of actual harm here? Yeah, so paying money sooner than she would have otherwise had to pay the money is enough for Article III standing. No, I don't understand that answer. She had to pay the money earlier than she did pay it. She was late.  The money was owed. It was already late. So I don't see how you can say she paid the money earlier than she had to pay it in the sense of earlier than she had already promised to pay it. It may be that she just didn't want to pay, but paying money that you concede is already overdue is hard to see as a legal injury. It's undisputed here that there would have been no consequences had Ms. Milam not paid this on day 36. Beside the interest running on the loan. Sorry? Beside the interest running on the loan. Sure, but there would not have been a foreclosure, there would not have been acceleration if she had not paid within this time frame. The consequences on day 34 are exactly the same as the consequences on day 36. Do you have some case saying that it is a legal injury, a source of standing, to pay money that is in fact owed, was in fact owed earlier than it was paid, but that the plaintiff simply didn't want to pay? So there's not a case saying exactly that, but in the Diffenbach case, this court did talk about how the time value of money, the loss of use of your money, even if temporary, is sufficient for Article III standing. And standing wasn't raised here or below or just by the district court. Standing is mentioned at all times in every case. I understand, but if the court does have concerns about standing, we would welcome the opportunity to brief that issue and present case law on that point of whether this can be sufficient for Article III standing. I understand how the letters could have been threatening, viewed as harassing, coercive, all of that. But they're all with respect to a debt that was already owed, was already behind in its payment schedule, and to which interest was already accruing. So you'd say, that's just a factual observation, is all that is. So what's the harm then? The harm is that, but for this letter, she would have been able to make a payment to avoid acceleration and foreclosure at any time 120 days before her loan was delinquent. And because of this letter, she made that payment, or she moved money around, she used that, and she tried to make the payment. So the harm is that she lost a choice as to what she would do with her assets? That's right. It's not only a choice of what to spend the money on, but she lost the use of that money for the remaining days that she otherwise would have been able to use that money for other things, and instead had to put it to this within 35 days instead of within the 120 days. And that is the harm, and that's an economic injury regardless of the size of the injury. It is still sufficient for Article III standards. Is it her contention that she was earning more on that money than the amount of interest running on the loan? I think it's not just the amount that she would have earned on that money, although sometimes courts do look at the interest rate to determine the time value of money. I understand a loss if you have a loan at 10% and you say I've had to withdraw this from an investment that was making 15%. I didn't see such an argument. We'll call for supplemental briefs from the parties, and if there's an argument of that kind available, please do present it. Yes, that's right. I think that I'm not sure about the answer to your question about the interest, and I think that would be a reason to order supplemental briefings so we can develop those facts. None of those facts were developed in the district court, and it may be appropriate for the district court to address those facts in the first instance. Well, you have to tether it to what's alleged in the complaint. So keep that in mind when you prepare your supplement. It's not just a matter of just brainstorming on appeal. No, I understand. But, yeah, we would welcome the opportunity to brief that issue. I want to just. Let me just, you know, Selene didn't seem to contest that the lost time value of money can demonstrate actual damages, but it did argue that Ms. Malem did not present that theory to the district court that it is waived. That's right. They do not appear to dispute that time value of money is sufficient for actual damages. And what we and we did argue and Ms. Malem argued below that she paid money that would have gone to other sources towards her balance with Selene. That's at paragraph one or two of the complaint. And then in her opposition to the motion to dismiss at Appendix 142, she argued that that was sufficient for actual damages. So Selene is wrong that she did not raise this below. There's no requirement that she used the particular phrase time value of money because she described the concept of spending her money on other things rather than on her balance with Selene. Of course, you argued in the brief that premature payment is itself an inherently economic loss because of the time value of money. But did you set forth any details as to what the money would have been used for if it hadn't been diverted for the payments? So to allow that inference, you know, I mean, even if we normally would liberally construe the allegation, should that same construction apply here where the allegations were held insufficient in the first amended complaint, but and not revised in the second amended complaint? The standard that applies to a motion to dismiss is the same as to the first amended complaint as to the second amended complaint. And the allegation that she paid money that would have gone to other sources towards her balance with Selene is, if taken as true, is sufficient here to plausibly allege actual damages under Illinois law. And, you know, that she did not, to answer your question, allege specifically what those other sources were. But at the motion to dismiss stage, the allegation that she would have spent the money on other things, and in fact, the allegation that she just paid sooner than she otherwise would have, is enough to show the loss of the time value of money. Because it's not what she would have spent the money on, it's the fact that she lost the use of that money for any reason, whether she wanted to spend it on, you know, necessary expenses or invest it in the stock market. Okay, counsel, I hope you see why, when you file your supplemental memo, that line of argument will not suffice. It won't suffice because interest was running on the loan. You need to show that there was a loss compared with the extra interest that had to be paid. And that's where you need to focus attention. I understand. Thank you, your honor. I'd like to reserve the rest of my time for rebuttal. Certainly, counsel. Thank you. Mr. Sedlin. Thank you, your honor. Misha Sedlin for Selene. I'd like to start with Article III standing. In this court's decision in Pinnell, 990 F. 3rd, 1041, and in Burnett, 982 F. 3rd, 1067, this court held in the FDCPA context that while just a bare allegation of the FDCPA violation and the emotional stress that would cause insufficient for Article III standing, if a plaintiff acts to their detriment on a Dunning letter, that's sufficient. In Paragraph 102 of the plaintiff's complaint found in Appendix 36, no, so Paragraph 101, I apologize, Appendix 36, plaintiff alleges that as a result of the letter, she began making plans for her daughter to live elsewhere. While that is not sufficient under Illinois law, under the actual pecuniary laws doctrine, which is why we raised the argument for dismissal of those claims, we think making plans for your daughter is acting to your detriment. Now, we are just at the motion to dismiss stage. Understanding, as Judge Easterbrook pointed out, has to exist to the whole case. If the court reverses the grant of motion dismissed, which we hope the court won't, we can certainly have factual development as to what steps the plaintiff took to her detriment to begin making plans for her daughter. But at this stage, we got a well-pleaded allegation, and so we thought that was enough for Article III standing to proceed with the case. Now, of course, if this court, notwithstanding that focus on the plans for the daughter, which wasn't discussed in the briefing here because we were talking about Illinois law, we're making plans for your daughter, unless this involves out-of-pocket money. I don't see what Illinois law has to do with the standing issue. Illinois law can have whatever standing rules it wants, but federal court has its own standing rules. Of course. If you've listened to the conversation we've had already, you will see where the supplemental briefs need to go. Fair enough, Your Honor. I was just pointing out why we didn't talk about making plans for the daughter when we were talking about the actual procurement loss argument that the district court accepted, because that wouldn't be enough for Illinois law, but it would be enough for Article III standing, which we will discuss in our supplemental submission that this court is ordering. Now, with regard to... Let me ask you this. How can we, at this point, determine whether Selene is merely hired for a service or is an assign of the lender? And the extent of any rights and duties assigned without factual development of the record, at least to encompass the agreement between Selene and the lender or other involved parties? Under Illinois tool works, the only thing required under Illinois law to have an assignment is some identifiable interest being transferred. Your Honors have on Appendix 125 the notice of assignment, sale or transfer that we had to provide to the plaintiff. My friends cite that notice in their brief here. I think it's fairly specific of reference in paragraph 37 of the complaint. Appendix 26 is fairly included within the complaint. And that notice of assignment, sale or transfer certainly shows that we were assigned some identifiable interest, which is all that's necessary to trigger Section 13 of the contract. What do you say about cases like Bayview loan servicing? I apologize? It's a case in which the Illinois Appellate Court held that a loan servicer was not an assignee for purposes of a contract like this. Illinois tool works is not about the question before us. It has general language. So this is a case under Illinois law. So the question is, what have Illinois courts said about the question whether a loan servicer is an assignee? Bayview loan servicing says that it is not. There are other similar cases in Illinois law, which your brief doesn't mention. Now, to be fair, I don't think Milan's brief mentioned Bayview loan servicing either. So it sent us off on a search through Illinois law to see what they've said about loan servicers as assignees. But that's where we need to go in order to figure out what the right answer is under Illinois law. Right, Your Honor. And I'm not familiar with any Illinois law that any law in law case. But there is some, whether or not you found it. We found it. Well, with all apologies, Your Honor. As we read, the standard on Illinois law is that you just need some identifiable interest. And if you take a step back in this provision, the way that the contract works is you've got to take the bitter of the sweet. Why did we have to give them the notice under Section 22 in order to foreclose and accelerate to begin with? That's because we have certain obligations under the contract. And the other side of that notice obligation under Section 22 is they've got to give us notice of an opportunity to cure. How do we know that an identifiable interest has been transferred as opposed to, by contract, a responsibility assumed by your client? In other words, that they just took on the act of collecting. They didn't get an interest in the contract. And they took on the act of collecting in exchange for compensation. But what does that mean? In other words, what I'm trying to figure out is the Illinois Supreme Court has distinguished between an assignment and a delegation of responsibility, for better or for worse. They have. So, in keeping with Judge Rovner's question, it's hard to look at this and just, from the pleadings, categorically conclude, oh, this is an assignment. I mean, maybe. But it could be a delegation, couldn't it? A delegation of responsibility to collect. Well, I mean, look, you have to look at the contract as a whole and read it sensibly. What sense would it make if the lender had decided to do its own servicing? And has sent the exact same letter. Word for word, by the way, this letter tracks Section 22. And they have brought that lawsuit. That wouldn't be, the plea wouldn't be allowed without a notice and cure letter from them. But if they assign to us the servicing obligations, we still, I don't hear them disputing, have to send that notification under Section 22. But they then don't have to send the notice and cure. They make a big deal out of the fact that Section 20 distinguishes between the roles, says that the servicer doesn't have to be the lender. Having said that, they allege in their complaint, and they admit, and this is, you know, that the servicer and the lender, this lender could do its own servicing. So they would have to say that reading that contract in full context, that the usual normal decision, which is not required, to contract out and assign servicing rights. I get what you're saying completely. Bank of America, JPMorgan Chase, Citibank, they could make a choice to service their own mortgages. They could make a choice to contract it out. But to observe that they contract the collection out, I don't know that that answers the Illinois question, Illinois law question of do we have an assignment or do we have a delegation without more? I don't know. I mean you can say, well, it sounds like an assignment. I mean maybe, but we know that the law distinguishes between the two. I understand that, but reading the contract to make sense. If they're right, the consequence would be that I guess if we wanted to foreclose and accelerate on the loan, we no longer would have to even send them a notice under Section 22 because we're not the lender. The way that I read the contract together is you've got to take the bitter with the sweet. If they have to, if we have to give that notice under Section 22 in order to give them a 30-day heads up that we're going to accelerate and foreclose. May I just say sort of on the line, I mean the legal status of Selene in this case, it's both relevant and cannot be ascertained absent for me further factual development. If indeed Selene is a successor or a sign of the lender, then it can seek the benefits of the notice of your provision. If it is simply an entity hired to perform a service, but not a successor or a sign, it cannot. And the answer depends on the nature of Selene's relationship with the lender. And that question for me can't be answered at this time. I mean, for me at a minimum, the documents that establish the legal relationship between Selene and the lender or its successor or a sign would be relevant to making that determination. And of course, at this point in time, we take the allegations that the complaint is true. And she has alleged that Selene was delegated only limited servicing rights. So that's where I am, unless you can convince me otherwise. Your Honor, obviously, if Your Honor doesn't think that the notice of assignment, sale, or transfer of servicing rights found at Appendix 125 is insufficient, then Your Honor won't agree with us that the district court can be affirmed on the notice-in-care basis. I would ask Your Honor to look at Appendix 125. If Your Honor thinks more factual development is necessary, and maybe it relates to the Article III standing inquiry as well, I suppose a remand more globally would make sense. That's part of the letter, though. That's the letter, right, that Selene sent out saying, hey, we Selene are now to the plaintiff. We're now servicing the mortgage. That's right. That's right. And we think that that letter, which is titled Notice of Assignment, Sale, or Transfer of Rights, is sufficient under Illinois law. Now, I hear from Judge Rovner that, to her mind, that is not sufficient. If that's the case and more factual development is necessary on that, then unless the court accepts our alternative argument that the face of the letter is not false or deceptive as a matter of law, then remand would be required for whatever factual development this court thinks is necessary on that basis. Now, with regard to that alternative argument, I take my friend's point that this court usually doesn't determine things in the first instance, but this was an argument that we raised below, and obviously the district court didn't rule on it. Now, what all the letter does in our respect for submission is essentially track what Section 22 of the security instrument says we need to do, and this is a security instrument. You can look at the second page of it. It's just a standard instrument for loans, and we just followed what it said. The plaintiff's complaint with the letter seems to be that we didn't enumerate other legal barriers that could attend to the timing of when the foreclosure in particular would need to occur, but the letter says may on its face. It's a standard letter that just tracks what Section 22 says is exactly what we needed to provide. Not exactly. I think the actual language is not nearly as benign as Selene, as you assert, and I don't think it's so clearly. I see problems. You know, May 22nd is well before 120 days, and under the regulation that even Selene recognizes, Selene can't in fact proceed with the foreclosure at that time, and that limitation for me at any rate is not clear at all from the language. Instead, the language states that as of that day Selene may proceed with the foreclosure. So for me, at worst, it's a false statement, and at best, it's potentially misleading, because we do not expect mortgage holders to know that the federal regulations will require Selene to delay foreclosure further until 120 days. And I guess my thinking at this point is that at a minimum, it raises a question of fact that would not be amenable to dismissal for failure to state a claim. Mr. Grover, I'm sorry I'm not able to convince you in any of my arguments this morning, which is obviously unfortunate for me. I mean, I will just say that I think the May language, similar to the May language in the Dunbar case where this court affirmed the dismissal, what I said, it may have tax consequences. No, I don't think you're getting the point of my colleague's question. May says it's optional to do something within 35 days. The question is whether there is a legal rule requiring a loan servicer to wait for 120 days. If there is, then May is false. So is there such a legal rule? Yes, there is. Then May is false. I disagree with that, Your Honor. It would be a violation of law for your client to commence the process 40 days, 50 days, 60 days, and so on. That's right, Your Honor, but we did not say that we would do it immediately. And if the letter read as a whole, it says if you can't cure this default, contact us. We want to work with you. Here are the various steps that are going to occur if you do it. I don't think a, you know, the standard is the unsophisticated debtor would look at that and say what this letter is actually having the word immediately in there. I think what the letter fairly read says is you owe the debt. You've got to pay within 35 days, which is, by the way, less than the time frame in Section 22. But if you've got a problem with that, contact us. And it says in bold, we want to work with you. We want to work with you is not the kind of language, when paired with May, that an unsophisticated debtor would think that. Okay. I think we have your position, counsel. Thank you all. Ms. Leighton, anything further? I would just like to briefly address their argument about the assignment and whether, as a matter of law, this can be decided. In the Dominguez case that involved both Selene and the same lender as here, it turned out after discovery that Selene was not an assigned. The lender had retained all ownership of the servicing rights and had merely hired Selene as an independent contractor to service the loan. So that is likely to turn out to be the case here. So it is certainly not true that because Selene services the loan, it's automatically an assigned that can enforce the noticing for a provision. Additionally, they argue that under Section 22, Selene is required to provide this notice. And so, therefore, they're suggesting that we can't have it both ways. But, in fact, Section 22 imposes a requirement on the lender that the lender can choose to fulfill by hiring a loan servicer like Selene to act on its behalf. That doesn't mean that it is assigning its rights to Selene to service the loan. It just means that it is hiring Selene to send this notice on its behalf, which is what happened in Dominguez and is likely what is happening here. Thank you, counsel. Thank you. The court directs the parties to file, within 14 days, supplemental memoranda addressing the question whether plaintiff has standing. When those memos have been received, the case will be taken under advisement. And now the court will take a 10-minute break before calling the third case.